(Green, J.
delivered the opinion of the court.
The principal ground of controversy arises upon the construction to be given to this letter. “The counsel for the plaintiff requested the court to charge the jury, that *179 the letter of Wistar, Siter and Price, of the 10th of October, 1824, addressed to Cowden and Sanderson, did not constitute the latter general agents, or give them any au-fhority to make an agreement with Donelly and Lewis to postpone the time of the delivery of the salt beyond the first day of November, or authorize them to receive the salt at Nashville at a subsequent period, on the note, at one dollar and twelve and one half cents per bushel, when salt was of less value than that price; but the court refused so to charge the jury, and charged them, that his opinion was that the said letter constituted Cowden and Sanderson gen* eral agents in this transaction, and gave them authority to make such an agreement with Donelly and Lewis, and to receive the salt upon the note subsequently to the first of November, although the market price at Nashville was less than the price specified in the note.”
In this charge we think the court erred. The general expressions at the conclusion of the letter, “as our agents we expect you to consider our interest, and act as if the property was your own,” in our view relate, and are to be confined to the subjects about which the writers had, immediately preceding their introduction, been giving directions. They supposed, as they state, that the salt would be in a course of delivery before the arrival of their letter at Nashville. They did not contemplate that payment would be postponed beyond the day, and therefore could not have intended these expressions to relate to any such contingency. But they had heard that salt was $1 25 per bushel, and therefore thought that it would be best to sell it as fast as it would be received, and thereby avoid the expenses of drayage, storage, waste, &c. They also thought it would be best that remittances should be made them, “if in drafts, by mail, and if in notes, by private hand. ” But as they were at so great a distance, it was manifest they could not be so informed as to speak positively, as to what would be best. If salt were $1' 25 per bushel, that price would indemnify them, and they *180 Were disposed to reduce tlie article to money at once, r , . / . without delay or loss. But they might be misinformed as t0 the prjce; or it might fluctuate between the 10th of October, the date of their letter, and the first of November; they would not therefore positively direct a sale immediately, because it might be prudent to delay for a better price; and this they leave to the discretion of their agents. The manner of remittance too might be more conveniently effected otherwise than as suggested by them, and therefore they leave this also to the discretion of their agents. To apply the concluding general expressions of the letter to the time of selling the salt and to the manner of making remittances, makes the whole appear plain and consistent; whereas the court think the construction given by the circuit court, is strained and unnatural. We think, therefore, that this letter did not authorize Cowden and Sanderson to receive payment of the note, otherwise than as prescribed by its terms, aiid that in doing so, they exceeded their authority, and did not, by that act, bind their principals.
It is true, as contended by defendants’ counsel, that the fact that Cowden and Sanderson had the bonds in their hands, was evidence of their authority to receive payment; but it gave them authority to receive that payment according to the terms of the bond, and not otherwise. The bond was for money, with the privilege of making payment by the day in salt; but payment not having been made by the day, that privilege was forfeited, and the plaintiff was not bound afterwards to receive the salt.— The receipt by the agents, not being in pursuance of their authority, was not obligatory on the principals, and consequently nota payment of the note. The judgment must be reversed, and the cause remanded for another trial to be had thereon, upon the principles laid down in this opinion.
Judgment reversed.